31 A.3d 103

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Alexander N. AGILIGA.

AG No. 21, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 26, 2011.

James P. Botluk, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Atty. Grievance Commission of Maryland), for petitioner.

Alexander Nnanna Agiliga, Largo, Maryland, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Or Remedial Action against Alexander N. Agiliga, the respondent, in which it alleged that the respondent violated Maryland Rules of Professional Conduct (MRPC) 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping Property), 1.16 (Declining or Terminating Representation), 5.5 (Unauthorized Practice of Law), and 8.4 (Misconduct). Bar Counsel also alleged that the respondent violated Maryland Rules 16–603 (Duty to Maintain Trust Account), 16–604 (Trust Account—Required Deposits), and 16–609 (Prohibited Transactions), as well as Maryland Code (2000, 2010 Repl.Vol.) § 10–306 of the Business Occupations and Professions Article (Misuse of Trust Money).

We referred the case, pursuant to Rule 16–752(a), to the Honorable Maureen Lamasney, of the Circuit Court for Prince George's County, for a hearing pursuant to Rule 16–757(c) to make findings of fact and recommend conclusions of law. Judge Lamasney held a hearing on February 22, 2011, and issued Findings of Fact and Conclusions of Law on March 24, 2011. She found by clear and convincing evidence that the

---

1. Maryland Rule 16–751(a) provides:

    (a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

respondent had violated MRPC 1.1, 1.3, 1.15(a), (d), and (e), 1.16(d), 5.5(a) and (b), 8.4(b), (c), and (d), Maryland Rules 16–603, 16–604, and 16–609, and Section 10–306 of the Business Occupations and Professions Article. Judge Lamasney submitted the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The respondent, Alexander Agiliga, was admitted to the Bar of Maryland on June 23, 1993. On October 30, 2008 he was decertified from the practice of law for failing to file a report concerning his pro bono services. On April 6, 2009 he was suspended from the practice of law because he failed to pay his assessment from the Client Security Trust Fund.

This petition concerns four cases handled by the petitioner. All allegations concerning the case of Juliet Williams were withdrawn by the Attorney Grievance Commission immediately prior to the hearing.

Elizabeth Sarumi retained the respondent for her personal injury claim and was treated by Prime Care Chiropractic. According to the testimony and records of the Office Manager of that business, Patrice Johnson, Ms. Sarumi['s] total bills were $3225.00. Geico paid $1883.37 directly to Prime Care Chiropractic, leaving a balance of $1341.51.

The respondent signed a medical assignment, agreeing to pay Prime Care Chiropractic out of any settlement. There is no dispute the case settled; despite that, Prime Care Chiropractic was not paid and has yet to be paid. Six "patient status letters" were sent to the respondent without response. The respondent has no records regarding the amount of settlement or any other recollection concerning this case.

A second client, Janay Perry, who also had a personal injury claim, was treated by Prime Care Chiropractic. Once again a Doctor's lien was signed; once again the case was settled and once again no payment was received from the respondent. Seven letters were sent to him regarding Ms. Perry. No response was received. The unpaid balance

regarding Janay Perry is $2080.00. The respondent has no records pertaining to this case, including the amount of settlement.

Ablavi Amegee and Koffivi Adedze Doglan retained the respondent together for their personal injury case. Heidi Riggs testified as the Office Manager for Riggs Chiropractic Clinic, where they received treatment. In that case, Ms. Riggs accepted partial payment and no money is owed to the Riggs Clinic. While their case settled in November 2008, payment was not made to the clients until March 2009.

The respondent testified that all of the above omissions were caused by his own dire financial situation. He was "locked out" of his law office and had no access to his files or his mail. Once he obtained access, he reviewed his files and resolved them appropriately.

He further agreed that he did not maintain an escrow account, but had a "business" account separate from his personal one. He also acknowledged that he was decertified and suspended for failing to file a pro bono report and to contribute to the Client Security Trust Fund. These lapses occurred because the mail did not reach him due to the office "lock out" and he corrected the situation as soon as possible.

The Court finds by clear and convincing evidence that the respondent violated the following rules of the Maryland Rules of Professional Conduct:

**Rule 1.1.  Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

The respondent failed to maintain records concerning the cases of Janay Perry and Elizabeth Sarumi. Minimal records exist regarding Ablavi Amegee and Koffivi Adedze Doglan.

Secondly, he failed to pay the money owed to Riggs Chiropractic and Prime Care Chiropractic.

Thirdly, he failed to keep an escrow account, leaving client funds vulnerable to garnishment during his personal financial crisis.

### Rule 1.3. Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

The respondent failed to disburse settlement funds to Amegee and Doglan for at least three months, and has not yet paid the Health Care providers. Furthermore, he did not respond to their inquiries nor maintain a current address with them.

### Rule 1.4

### Rule 1.5

Both applied only to the Williams matter. These allegations were withdrawn before the hearing.

### Rule 1.15. Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall

promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

[With respect to] Rule 1[.] 15 a) the respondent freely concedes that he failed to maintain an escrow account; c) the allegation was withdrawn; d) the respondent failed to notify the treatment providers in a prompt manner of the settlements of Perry and Sarumi and failed to promptly disburse funds to Amegee and Doglan; and e) the respondent failed to maintain the funds separately to which Prime Care Chiropractic was entitled in both the Perry and Sarumi cases.

### Rule 1.16   Declining or Terminating Representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The respondent failed to disburse the money due to Amegee and Doglan for an unreasonable length of time after the case had settled.

## Rule 5.5 Unauthorized Practice of Law; Multijurisdictional Practice of Law.

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by the[se] Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

The respondent continued to practice law while decertified and suspended.

## Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

## § 10–306. Misuse of trust money. Business Occupations and Professions Article, Ann.Code of Maryland

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

## Maryland Rule 16–603. Trust Account–Duty to Maintain Account.

An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an

approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person.

**Maryland Rule 16–604. Trust Account–Required Deposits.**

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

**Maryland Rule 16–609. Trust Account–Prohibited Transactions**

(a) Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

The respondent freely admitted that he did not maintain an escrow account as required by Rule 16–603. When he accepted the settlement funds in the case of Mr. Amegee and Mr. Doglan he violated Rule 16–604.

The manner in which the "business" account was maintained violated Rule[ ] 16–609 and [Section] 10–306 of [the] Business Occupations and Professions Article.

The bank records reflect that $12,100.00 was deposited in the account for the benefit of Amegee and Doglan. After

taking a one third fee, $8075.00 should have remained for the benefit of the clients. The balance at the end of the month was $7,702.63. The failure to maintain sufficient funds on their behalf violates Rule 8[.]4(b)(c) & (d), Business Occupations and Professions Article [§] 10–306[,] and Rule 16–609. Additionally, each chiropractic clinic was entitled to funds which they never received. All of these omissions constitute conduct prejudicial to the administration of justice.

The Court finds by a preponderance of the evidence that the following mitigation exists:

Respondent was facing serious financial challenges that affected his practice. None of his actions or omissions were the result of a deliberate intent to defraud. Respondent testified forth rightly and did not attempt to evade or avoid questions.

## DISCUSSION

Neither the petitioner nor the respondent filed exceptions to the findings of fact and conclusions of law made by the hearing judge. The petitioner recommends that we impose the sanction of disbarment; however, the respondent recommends that we impose a lesser sanction. Relying primarily on our decisions in *Attorney Grievance Comm'n v. Stern*, 419 Md. 525, 19 A.3d 904 (2011), *Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 934 A.2d 1 (2007), and *Attorney Grievance Comm'n v. Brown*, 380 Md. 661, 846 A.2d 428 (2004), the petitioner argues that the respondent mishandled client funds and engaged in the practice of law "while he had lost his right to practice due to his failure to pay his Client Protection Fund assessment and his failure to file his *pro bono* report." Although the hearing judge found mitigating factors, namely that the respondent did not intend to defraud, the petitioner counters that we have disbarred attorneys "who [have] engaged in a pattern of misappropriation and misuse of client funds in violation of Rule 8.4(b) and (c). . . ." *See Nussbaum*, 401 Md. at 644–48, 934 A.2d at 19–22 (disbarring an attorney who intentionally withdrew client funds, including money for

legal fees or expenses, from his escrow account for his own use, for the use of other clients, or for the use of a third party). Therefore, the petitioner maintains that disbarment is the appropriate sanction, and we adopt the petitioner's recommendation.

Recently, we stated that "[t]his Court has original jurisdiction over attorney discipline proceedings, and is required to conduct an independent review of the record." *Attorney Grievance Comm'n v. Carithers*, 421 Md. 28, 42, 25 A.3d 181, 190 (2011). In our review of the record, the hearing judge's findings of fact generally will be accepted, unless they are clearly erroneous. *See* Md. Rule 16–759(b)(2); *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 28, 922 A.2d 554, 570 (2007). In the present case, because neither party filed exceptions, we may "treat the [hearing judge's] findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. Rule 16–759(b)(2)(A). We review the hearing judge's legal conclusions as a matter of law. Md. Rule 16–759(b)(1).

Because we accept the hearing judge's findings of fact as established and determine that the conclusions drawn from them are justified, we turn next to the question of sanction. As noted previously, the petitioner has recommended disbarment, while the respondent urges that we impose a lesser sanction. Respondent contends that he did not intend to violate the Rules, he testified truthfully when before the hearing judge, he "did not mean to defraud any client of the medical providers," and "[e]ven though the settlement money was deposited in the attorney['s] operating account, clients did not suffer any monetary loss as a result." It is the respondent's misuse of and failure to preserve client funds, coupled with his failure to appreciate fully the role of an attorney, that warrants the sanction of disbarment in this case.

The respondent's conduct in commingling client funds with his own funds was clearly willful and intentional and was not negligent. Upon his receipt of client funds, the respondent failed to pay medical providers in accordance with assign-

ments and authorizations to pay. The respondent failed to use an escrow account and, instead, placed client funds into his operating account. He then failed to safeguard and preserve those funds when his operating account was allowed to fall below the amount of client funds that were deposited therein. In addition, the respondent failed to maintain any ledgers or documentation to explain what monies were collected on behalf of clients and how those funds were disbursed. Further, the respondent engaged in the unauthorized practice of law while decertified and suspended by this Court for failure to pay his Client Protection Fund assessment and failure to file his *pro bono* report.

We have said that "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n. v. Gore*, 380 Md. 455, 472, 845 A.2d 1204, 1213 (2004). The respondent's actions were willful and dishonest. Whether he intended to defraud clients is immaterial to his deliberate invasion of their funds. By depositing client funds into his operating account and spending any portion of those funds, the respondent intentionally misappropriated client money. We have stated on numerous occasions that the misappropriation of entrusted funds " 'is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.' " *Nussbaum*, 401 Md. at 644, 934 A.2d at 19 (quoting *Attorney Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 161, 879 A.2d 58, 81 (2005)); *Brown*, 380 Md. at 669, 846 A.2d at 433 (noting the general rule "that disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds") (internal quotation omitted).

The respondent presents no compelling extenuating circumstances to justify his placement of client funds into his operating account and spending them. Although he urges as justification for his conduct the fact that his landlord locked him out of his office for a period of time, that circumstance in itself in no way justified placing entrusted monies into his operating

account and spending them. Here, similar to the situation in *Stern*, 419 Md. at 558, 19 A.3d at 926, the respondent's personal injury clients signed authorizations such that health care providers would be paid for services rendered from any recoveries obtained in their cases. Not unlike the facts in *Stern*, rather than remit payment to all health care providers that were owed payment, the respondent in the present case misappropriated entrusted funds. Moreover, even at this late date, as confirmed by the respondent in oral argument before this Court, all the client funds that he spent have not been returned to the clients or disbursed to the health care providers as required.

Finally, we consider that the respondent has disregarded an order of this Court by continuing to practice law for a period of time while decertified. His decertification on October 30, 2008 arose as a result of his "fail[ure] to file a report concerning his pro bono services." Thereafter, on April 6, 2009, he was suspended from the practice of law because he failed to pay his Client Protection Fund assessment. As concluded by the hearing judge, the respondent's unauthorized practice of law violated MRPC 5.5(a).

We are persuaded that the respondent's conduct in misusing client funds, failing to use an escrow account to safeguard client funds, failing to keep records to document the receipt and disbursement of client funds, and engaging in the unauthorized practice of law, all of which was unmitigated, warrants the imposition of the sanction of disbarment. Accordingly, we shall so order the respondent's disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.**