50 A.3d 1205

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Donya Tarraine ZIMMERMAN.

Misc. Docket AG No. 32, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 21, 2012.

120

James P. Botluk, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

John O. Iweanoge, Jr., Washington, DC, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

ADKINS, J.

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent Donya Tarraine Zimmerman. Bar Counsel charged Zimmerman with violating several rules and statutes in her capacity as representative of Monique V. Shilling and Deedra L. Danner. Specifically, Bar Counsel alleged that Zimmerman violated Maryland Rules 16–604 (Trust Account—Required Deposits)[1]

---

1. Maryland Rule 16–604 provides:
 Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by ʲan attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not

and 16–609(a) (Prohibited Transactions);[2] Maryland Code (1989, 2010 Repl.Vol.), Section 10–306 of the Business Occupations and Professions Article (Misuse of Trust Money);[3] and the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"):[4] Rule 1.3 (Diligence);[5] Rule 1.4 (Communication);[6] Rule 1.15(a) and (c) (Safekeeping Property);[7] Rule

---

apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

2. Maryland Rule 16–609(a) provides:

An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

3. Section 10–306 provides "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

4. Unless otherwise provided, all citations below to the rules are to the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").

5. Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

6. Rule 1.4 provides:
 (a) A lawyer shall:
 (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
 (2) keep the client reasonably informed about the status of the matter;
 (3) promptly comply with reasonable requests for information; and
 (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

7. Rule 1.15 provides, in pertinent part:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Mary-

1.16(d) (Declining or Terminating Representation);[8] and Rule 8.4(b)-(d) (Misconduct).[9]

Following a hearing in the Circuit Court for Montgomery County, Judge Louise G. Scrivener issued findings of fact and conclusions of law. With regard to Shilling's complaint, the hearing judge found that Zimmerman violated MLRPC Rules 1.15(a) and (c), 1.16(d), and 8.4(b)-(d), as well as Maryland Rule 16–609(a)–(c). With regard to Danner's complaint, the hearing judge found that Zimmerman violated MLRPC Rules 1.3, 1.4, 1.15(a) and (c), 1.16(d), and 8.4(b)-(d), as well as Maryland Rule 16–609 and Section 10–306 of the Business Occupations and Professions Article. Zimmerman appeared

---

land Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

**8.** Rule 1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**9.** Rule 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:

\* \* \*

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

before this court on June 11, 2012, and we disbarred her in a *per curiam* order the next day. We now explain why.

## Background

The hearing judge outlined some background matters:

The Respondent, Donya Tarraine Zimmerman, was admitted to the Bar of the Court of Appeals of Maryland in December 2001. She is not admitted in any other jurisdiction. Since then, she has had a solo practice, primarily handling bankruptcy and family law matters. Her current office is located in Baltimore, but at the time of the matters involved in this Petition, Respondent's office was in Gaithersburg, Maryland.

The hearing judge made the following findings of fact respecting Shilling's complaint:

Respondent began representing Monique Shilling in 2007 or 2008, regarding a modification of child custody and child support. Ms. Shilling made a number of payments on her bill, the last one being in the amount of $3,000.00, paid on or about May 28, 2010. A portion of that payment was an advance payment of costs and expenses. In July 2010, Ms. Shilling terminated Respondent's services and requested a refund of the unearned portion of the retainer. Respondent determined that the unearned amount was $805.00. Respondent returned those funds to Ms. Shilling by a money order on November 15, 2010.

During the period of time Respondent represented Ms. Shilling, Respondent only had one escrow account, which was at M & T Bank. Accordingly, Respondent should have been holding at least $805.00 in her escrow account after she received the payment at the end of May 2010 until she refunded that amount in November. Yet, the balance held in her escrow account as of June 1, 2010 was $17.17. Respondent's client ledger for Ms. Shilling shows that check no. 1162, dated June 5, 2010, in the amount of $500.00, was credited against Ms. Shilling's retainer. The payment is described as "IRS payment" on the client ledger. Respon-

dent testified that this check to the United States Treasury was a payment of Respondent's own business tax obligation.

Respondent testified in her deposition that the portion of the payment received from Ms. Shilling on May 28 that reflected advance payment of fees was $1,500.00. She deposited that amount in her escrow account on June 8, 2010. Assuming that those funds were the Shilling retainer, the balance in the escrow account dropped to $427.07 on June 14. By the end of June, the balance was $2.07. Respondent failed to maintain the unearned portion of Ms. Shilling's retainer in her escrow account.

Respondent made a number of promises and representations to Ms. Shilling regarding the return of her retainer in e-mail correspondence in the summer and autumn of 2010. On August 5, she promised to mail the balance of the retainer by the end of the following week. On August 23, she promised, "I will put the check in the mail tomorrow with your last billing." On September 3, 2010, Respondent claimed, "I sent it in the mail by certified mail." In her deposition, Respondent acknowledged that the mailing of the money order in November was her first attempt to refund the retainer to Ms. Shilling.

With respect to Danner's complaint, the hearing judge found:

Respondent began representing Deedra Danner in July 2010. On July 22, 2010, Ms. Danner signed a retainer agreement and gave Respondent a check in the amount of $2,000.00 as a retainer. Approximately a week later Ms. Danner reconciled with her husband. On July 29, she left Respondent a voice mail message, notifying her that her services would no longer be needed. Respondent returned her call the following day and suggested that she hold the retainer for a month in case Ms. Danner changed her mind. After a month, Ms. Danner received an invoice indicating that $1,610.00 would be returned, but no check was enclosed. In late October, Ms. Danner contacted Respondent's office and made an appointment for November 11, 2010 to pick up the check and her client file. That appoint-

ment was ultimately canceled due to Respondent's represen-
tation that she had hurt her back. Respondent did not
forward the check or the file to Ms. Danner. Ms. Danner
attempted to recover her retainer by enlisting the efforts of
the Fee Dispute Resolution Committee of the Bar Associa-
tion for Montgomery County. On December 9, 2010, Re-
spondent sent an e-mail to Karen Robbins of the Fee
Dispute Resolution Committee, stating that she had sent the
payment by money order and would have to have the money
order replaced. She claimed that she had sent the money
order about two weeks earlier. In her deposition, Respon-
dent could not provide any details regarding the alleged
Western Union money order or her attempts to have the
money order reissued. As of the hearing on February 13,
2012, Ms. Danner had never received the $1,610.00 balance
of her retainer.

The hearing judge made these findings with respect to
Respondent's use of her escrow account:

Ms. Danner testified that the Respondent cashed the
retainer check at Ms. Danner's bank, Chevy Chase Bank.
The reverse side of the retainer check corroborates that
Respondent endorsed the check and presented her driver's
license as identification to cash the check at the drawer's
bank, rather than to deposit the check in her escrow ac-
count. The check was cashed on June 22, 2010. Respon-
dent deposited $2,600.00 in her escrow account on July 25,
2010. There is no notation of the source of funds for that
deposit to indicate whether those funds pertain to Ms.
Danner. Assuming those funds represent, in part, Ms.
Danner's retainer, the remaining $600.00 from that deposit
was disbursed from the account on July 23, 2010, by check
no. 1168 for $600.00, which was paid to Respondent's secre-
tary, Althea Burnett for "pay for week of 7/23/10". The
balance in the escrow account before the June 26 deposit
was $47.07. Accordingly, any additional disbursements
from the escrow account in excess of $47.07 were from Ms.
Danner's retainer. Check no. 1169, dated July 27, 2010, in
the amount of $150.00, was for "svcs rendered in Danner

case". Check no. 1171, dated July 30, 2010, in the amount of $300.00, was also for services in the Danner case. Respondent took a total of $450.00 in fees from Ms. Danner although her invoice indicates the total fee to which she was entitled was only $390.00. By August 6, the balance in Respondent's escrow account was $87.17. Disbursements using Ms. Shilling's funds included payment of Respondent's malpractice insurance premium (check no. 1172 to AFCO, dated August 2, 2010, for $85.10), $250.00 for dues to the Bar Association of Montgomery County (check no. 1173, dated August 2, 2010, and check no. 1174 dated August 2, 2010), and checks to herself (check no. 1175, dated August 2, 2010 and check no. 1176, dated August 4, 2010).

Respondent acknowledges having four overdrafts on her escrow account during September and October 2010. It should be noted that Respondent should have been holding $805.00 for Ms. Shilling and $1,610.00 for Ms. Danner in her escrow account at that time. Respondent's escrow account had a negative balance on four occasions in September and October 2010. Her escrow account balance was below the total of $2,215.00 that belonged to Ms. Shilling and Ms. Danner at all times after July 26, 2010 through October 8, 2010, except for August 9. In her response to Bar Counsel regarding the overdrafts, Respondent explained that she failed to wait for deposited items to clear before she drew on those funds. No evidence on this point was presented.

A review of the checks drawn on Respondent's escrow account shows that she regularly paid her business expenses out of this account. As noted above, Respondent paid her federal taxes with an escrow account check, using funds that belonged to Ms. Shilling. She drew 14 checks on her escrow account to pay her secretary, Althea Burnett from June through September 2010. She also paid bar association dues and malpractice insurance premiums from the escrow account.

On November 5, 2010, Respondent drew a check for "cash" in the amount of $1,100.00 from her escrow account.

Based on the findings of fact, the hearing judge made the following conclusions of law with respect to Shilling's complaint:

Rule 1.15(a) requires that a lawyer hold property of clients separate from the lawyer's own property and those funds be kept in an attorney escrow account. The records of Respondent's bank account show that Respondent did not deposit the check she received from Ms. Shilling on May 28, 2010 in her escrow account. It appears that the unearned portion of that payment, in the amount of $1,500.00, was deposited in Respondent's escrow account June 8, 2010. From May 28 until June 8, 2010, Respondent failed to hold Ms. Shilling's funds in her escrow account. Respondent violated Rule 1.15(a) by her failure to hold Ms. Shilling's funds in her escrow account during that period of time.

Rule 1.15(c) requires that a lawyer deposit advance payments of legal fees and expenses in an escrow account and prohibits the lawyer from withdrawing the funds for her own benefit until earned, absent the client's informed consent confirmed in writing. At all times after June 8, Respondent should have held at least $805.00 in her escrow account on behalf of Ms. Shilling until she returned those funds to the client in November 2010. In fact, Respondent's balance in her escrow account was $2.07 as of the end of June 2010. Respondent drew check no. 1162 on her escrow account to pay her federal tax obligation pertaining to her business. That check was identified on the client ledger for Ms. Shilling as coming from Ms. Shilling's funds. When the check to the IRS was posted to Respondent's escrow account on June 14, 2010, the balance remaining in the account was $427.07, substantially less than the amount still belonging to Ms. Shilling. By withdrawing funds belonging to Ms. Shilling for Respondent's own benefit when those funds had not been earned, Respondent violated Rule 1.15(c) of the [MLRPC].

Rule 1.16(d) of the [MLRPC] requires a lawyer, upon termination of representation, to [take] steps to the extent reasonably practicable to protect a client's interest, includ-

ing refunding any advance payment of fee or expense that has not been earned or incurred. Ms. Shilling terminated Respondent's services in July 2010. Despite several promises around September to return the unearned balance, Respondent did not do so until November. Respondent's delay of four months in refunding the balance was unreasonable, particularly in light of the fact that she failed to maintain those funds in her escrow account. The delay in refunding the unearned portion of the payment to Ms. Shilling was a violation of Rule 1.16(d) of the [MLRPC].

Respondent's use of the unearned portion of Ms. Shilling's retainer for her own use, including the payment of taxes to the IRS, was a willful misuse of client funds. The willful misuse of client funds is a violation of section 10–306 of the Business Occupations and Professions Article, Annotated Code of Maryland. Respondent's blatant misappropriation of Ms. Shilling's money was a criminal act adversely reflecting on her honesty and trustworthiness in violation of Rule 8.4(b) of the [MLRPC, p]articularly in light of Respondent's false promises to mail the check to Ms. Shilling in August 2010 and her later false claim that she had mailed the check. Respondent's conduct of misappropriation and misrepresentation to the client violated Rule 8.4(c), conduct involving dishonesty, fraud, deceit or misrepresentation; as well as Rule 8.4(d), conduct prejudicial to the administration of justice.

Based on the findings of fact, the hearing judge made the following conclusions of law about Respondent's use of her escrow account:

Respondent received funds from Monique Shilling and Deedra Danner which were advance payment of fees. Respondent did not deposit the checks in her escrow account. She deposited funds in her escrow account after cashing the checks. At times when the escrow account should have been holding at least $2,215.00 for these two clients, Respondent transferred funds to her checking account, drew checks to herself, paid her secretary her salary on numerous occasions, and paid business expenses related to her law

practice, including bar association dues, malpractice insurance premiums, and taxes.

Respondent violated Rule 1.15(a) of the [MLRPC] by not depositing her clients' checks directly in the escrow account. She violated Rule 1.15(c) by disbursing funds from her escrow account to pay her business expenses, thereby invading the funds she should have been holding for these clients. Her willful and deliberate use of client funds to pay her own expenses was a misappropriation and misuse of trust funds in violation of section 10–306 of the Business Occupations and Professions Article, as well as criminal conduct in violation of Rule 8.4(b) of the [MLRPC]. Respondent's misuse of client money was dishonest conduct and was prejudicial to the administration of justice in violation of Rules 8.4(c) and (d). The use of client funds to pay Respondent's taxes and other business expenses was a use of trust funds for an unauthorized purpose in violation of Maryland Rule 16–609(a).

Respondent violated Rule 16–609(b) by drawing a check payable to "cash" in the amount of $1,100.00 on November 5, 2010.

Respondent violated Maryland Rule 16–609(c) by having negative balances in her escrow account on four occasions in September and October 2010. Her failure to maintain a balance of at least $2,215.00, representing the amounts owed to Ms. Shilling and Ms. Danner at almost all times after Ms. Danner's funds were deposited in July 2010 until the disbursement of funds to Ms. Shilling in November 2010 also constitutes a violation of [Rule 16–609(c) ], which prohibits any disbursement of funds from the escrow account which would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

The hearing judge made the following conclusions of law with respect to Danner's complaint:

Respondent's failure to return the retainer and her failure to respond to her client about the refund is a lack of diligence and communication in violation of Rules 1.3 and 1.4

of the [MLRPC]. Respondent is continuing to violate Rule 1.16(d) by failing to return the retainer and failing to return client documents despite repeated demands.

Respondent cashed Ms. Danner's check rather than depositing it in her escrow account. It appears that she made a cash deposit which contained those funds three days after she cashed the check. Respondent's cashing of the check and delay in depositing those funds in her escrow account violated Rule 1.15(a) as well as Maryland Rule 16–604. Respondent subsequently disbursed two checks totaling $450.00 for fees in the Danner case, although her invoice indicates a total earned fee of only $390.00. By taking a fee greater than that earned, Respondent violated Rule 1.15(c). Respondent continued to use Ms. Danner's funds which were never earned by making numerous disbursements for business expenses to her. Eventually, the account had negative balances. Ms. Danner has never received a refund. Respondent's misappropriation of the unearned portion of Ms. Danner's retainer was willful, dishonest and criminal conduct in violation of Rule 8.4(b), (c) & (d) of the [MLRPC], Maryland Rule 16–609, and section 10–306 of the Business Occupations and Professions Article.

The hearing judge also discussed several potential mitigating factors:

Respondent testified that between January and December 2010, her mother was diagnosed with cervical cancer and that Respondent was the person nursing and taking care of her mother. She further testified that later in 2010, her father was diagnosed with prostate cancer and that she also cared for him.

While Respondent may well have been burdened with family responsibilities during 2010, those circumstances fail to mitigate use of trust funds for her own business expenses, and dishonesty with her clients when she kept telling them she had sent the money, when in fact she had not. Contrary to Respondent's argument, the Court does not believe that Respondent's failure to promptly refund client retainer balances was inadvertent, but rather, was

because she had spent the money and did not have the money to refund.

Respondent has now formed a loose professional relationship with Mr. Joseph Reid, II. They have no formal arrangement but Respondent deposits client trust funds into Mr. Reid's trust account and then bills that account for earned fees. Although Respondent testified that she was looking to take some CLE courses, she had not really found a course which focused on managing client trust accounts.

Of particular concern to the Court is that Ms. Danner has yet to receive the $1,610.00 owed to her, despite the lapse of almost 20 months and numerous promises[.]

### Standard of Review

As we recently described in *London:*

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. In that regard, the hearing judge is permitted to pick and choose which evidence to rely upon from a conflicting array when determining findings of fact.

We review de novo the hearing judge's proposed conclusions of law. In other words, the ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court. In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof.

*Att'y Grievance Comm'n v. London,* 427 Md. 328, 47 A.3d 986 (2012). Both parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition...." Md. Rule 16–758(b).

## Exceptions to Findings of Fact

Respondent notes six exceptions to the hearing judge's findings of fact. First, Respondent notes an exception to this finding:

Ms. Shilling made a number of payments on her bill, the last one being in the amount of $3,000, paid on May 28, 2010. A portion of that payment was an advance payment of costs and expenses.

Respondent argues that the $3000 was for "replenishment of Ms. Shilling's retainer account and owed legal fees" and that "only half of the $3000 was used to pay legal fees owed and [the] rest [was] placed into Respondent's escrow account for future legal fees." This exception is a non-starter. There is no apparent connection between Respondent's contention and whether evidence existed to support the hearing judge's finding.

Second, Respondent notes an exception to this finding: "the balance held in her escrow account as of June 1, 2010 was $17.17." Respondent argues that this finding "implies that the escrow funds had been depleted as of June 1, 2010 even though Ms. [Shilling's] fund in the amount of [$1500] was deposited on June 8, 2010." The hearing judge's finding was not clearly erroneous. The June 8 deposit could not possibly change the balance on June 1. Respondent seemingly attempts to rewrite history.

Third, Respondent notes an exception to this finding:

In her response to Bar Counsel regarding the overdrafts, Respondent explained that she failed to wait for deposited items to clear before she drew on those funds. No evidence on this point was presented.

Respondent argues that the deposit slips and bank statements for her trust fund account would confirm this point. We disagree and will not find clear error. In these matters, hearing judges must sort through conflicting evidence and

make factual findings. The record is sufficient to support the judge's findings.

Fourth, Respondent excepts to the finding that she

has now formed a loose professional relationship with Mr. Joseph Reid, II. They have no formal arrangement but Respondent deposits client trust funds into Mr. Reid's trust account and then bills that account for earned fees.

Respondent argues she has a business relationship with Reid, jointly entering into retainer agreements, working on cases together, and intending to form a law partnership together pending the disposition of this case. The words chosen by Respondent to characterize her professional relationship with Mr. Reid are perfectly fine. But so are the words used by the hearing judge. It was a professional relationship that was not a partnership, limited partnership, limited liability company, corporation, or other formally organized business or professional relationship. To characterize it as "loose" means just that it was not formalized or defined. The hearing judge committed no error.

Fifth, Respondent excepts to the finding that:

Although Respondent testified that she was looking to take some CLE courses, she had not really found a course which focused on managing client trust accounts.

Instead, Respondent says she testified that she tried to sign up with a relevant CLE course in the District of Columbia but could not because she was not a member of the D.C. Bar Association. She also tried to find a CLE course offered by the Maryland State Bar Association but averred that such a course is not offered. Her asserted distinctions are close to frivolous. We see no error.

Lastly, Respondent excepts to the finding that:

While Respondent may well have been burdened with family responsibilities during 2010, those circumstances fail to mitigate use of trust funds for her own business expenses, and dishonesty with her clients when she kept telling them she had sent the money, when in fact she had

not. Contrary to Respondent's argument, the Court does not believe that Respondent's failure to promptly refund client retainer balances was inadvertent, but rather, was because she had spent the money and did not have the money to refund.

■ Respondent argues that "she did not intentionally mishandle her trust account nor intentionally fail[ ] to refund Ms. Shilling and Ms. Danner their retainer balances." Instead, Respondent points out that she testified that she had returned Shilling's unearned retainer and "had every intention" to return Danner's. She also says that she testified about caring for her ailing parents, both of whom had cancer during the pendency of the matters in question. She acknowledges that she did not properly manage her escrow account, but says she is taking steps to properly manage it in the future. Moreover, we have already detailed the facts that support an inference that she intentionally spent the trust fund money, and lied to her clients about returning what was owed to them. Her failure to return the retainer funds to Ms. Danner even by the date of the hearing firmly establishes that her retention of the funds was not inadvertent.

In sum, the hearing judge's findings are reasonable, considering the evidence and the judge's role in assessing the credibility of witnesses and choosing which pieces of evidence to rely on during fact-finding. Indeed, findings like these epitomize the very role of the hearing judge in Attorney Grievance matters. *See, e.g., London,* 427 Md. at 343, 47 A.3d at 995 ("[D]eference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. In that regard, the hearing judge is permitted to pick and choose which evidence to rely upon from a conflicting array when determining findings of fact.").

## Exceptions to Conclusions of Law

As presented in her brief, Respondent notes exceptions to the conclusions that she violated MLRPC 1.15(a), Section 10–306 of the Business Occupations and Professions Article,

MLRPC 1.16(d), MLRPC 1.3, MLRPC 1.4, MLRPC 8.4(b), Maryland Rules 16–604 and 16–609, and MLRPC 8.4(b)-(d).[10]

Respondent notes an exception to the finding of a violation of Rule 1.15(a), which provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

██ Rather than deposit checks into her escrow account directly, Respondent cashed the Shilling and Danner retainer checks and later deposited the money into an escrow account. She said she did this to avoid fees associated with returned checks, a problem she had encountered in the past. This is an unacceptable method to address a returned check problem. She should have followed the procedure that she now offers as a better alternative—depositing the funds in her trust account before withdrawing earned fees. We hold that Respondent violated Rule 1.15(a).

Respondent concedes violating Rule 1.15(c), which states

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the

---

**10.** Although Respondent says in her brief that she "did not engage in conduct sufficient to satisfy violation of . . . Maryland Rule 16–609," she does not provide any analysis on this point or discuss it as one of her formal exceptions. Therefore, we shall overrule this exception.

lawyer's own benefit only as fees are earned or expenses incurred.

Although Respondent acknowledges that she "did not properly handle her trust account," she argues that she "did not intentionally or willfully mismanage or misappropriate [client] funds." Yet the hearing judge determined that she did, and her exception to this finding of fact was unpersuasive. We conclude that Respondent violated MLRPC 1.15(c).

 Similarly, Respondent takes exception to the hearing judge's conclusion that she violated Section 10–306 of the Business Occupations and Professions Article, which states: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Respondent urges us to find no violation because:

> Respondent's poor record keeping, family circumstance and financial hardship caused the unintentional use of Ms. Danner and Ms. Shilling's unearned funds for the payment of business expenses while under the mistaken belief that they were earned funds exacerbated by poor record keeping.

We are mindful of Respondent's difficult family situation, but these Rules governing client funds are crucial to upholding the integrity of the legal profession, and we will not deviate from applying them, even in difficult circumstances. *See, e.g., Att'y Grievance Comm'n v. Kreamer,* 387 Md. 503, 519, 533–34, 876 A.2d 79, 88, 97 (2005). As such, we are unpersuaded by Respondent's exception, especially when she concedes that her problems were exacerbated by poor record keeping. We hold that she clearly violated Section 10–306 of the Business Occupations and Professions Article.

Respondent takes exception to the finding of a violation of MLRPC 1.16(d), which states:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that

has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

■ Danner paid Respondent a $2000 retainer on July 22, 2010, and notified Respondent seven days later that her legal services were no longer needed. Respondent has not returned the retainer money to Danner, despite repeated requests. This failure to return the retainer alone is a violation of Rule 1.16(d). Respondent acknowledges such failure and says she is "working to refund her the money." Had Respondent not misappropriated the funds in the first place, there would be no need for Respondent to "work" to refund the retainer. The hearing judge also found that Respondent failed to return the client file. This is a clear violation of Rule 1.16(d), as Respondent failed to take reasonable and practicable steps to protect a former client's interest, despite her protestations that the case file merely contained copies of documents that Danner already had. *See, e.g., Att'y Grievance Comm'n v. Edib,* 415 Md. 696, 716–17, 4 A.3d 957, 969–70 (2010)

Furthermore, in the Shilling matter, it took Respondent four months to return the retainer funds to Shilling. Respondent argues that she refunded the balance of the retainer "within the time reasonably practicable in light of" her personal and family problems. We disagree. This delay was not reasonably practicable, considering that Respondent spent part of Shilling's retainer on her own business tax obligations and also failed to maintain the unearned portion of the retainer in the escrow account. We see a clear violation of MLRPC 1.16(b).

Respondent takes exception to the finding that she violated MLRPC 1.3 and 1.4. The hearing judge grouped these findings together, holding that "Respondent's failure to return the retainer and her failure to respond to her client about the refund is a lack of diligence and communication in violation of Rules 1.3 and 1.4[.]"

Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

▮ Respondent observes that Danner terminated Respondent's representation after only a few days. She argues that her subsequent failure to return Danner's retainer and lack of communication are insufficient to support a violation because at that point, Danner was a former client. On this point, we agree. As Respondent notes, there are specific provisions in the MLRPC dealing with return of retainer and former client matters, such as MLRPC 1.15 and 1.16, which Respondent has violated. There is not clear and convincing evidence in the record before us, however, that Respondent showed a lack of diligence or communication in the very short time during which Danner was her client. We therefore hold that Respondent did not violate MLRPC 1.3 and 1.4 and sustain this exception.

Respondent takes exception to the finding of a violation of MLRPC Rule 8.4(b)-(d). Rule 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:

\* \* \*

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

Although the hearing judge found a violation of part (b) with respect to both Shilling and Danner, Respondent takes exception only to the finding with respect to Shilling. With regard to the Danner matter, we agree with the hearing judge that "Respondent's misappropriation of the unearned portion of Ms. Danner's retainer was willful, dishonest and criminal conduct in violation of Rule 8.4(b)[.]" In the Shilling matter, the hearing judge also found a violation for the "blatant misappropriation of Ms. Shilling's money." Respondent takes exception to this by arguing that the hearing judge did not specify which criminal act was violated, and that there was no clear and convincing evidence that the conduct adversely reflects on Respondent's honesty, trustworthiness, or fitness as a lawyer.

Regarding the violation of parts (c) and (d), Respondent takes wholesale exception to the violations, and argues:

[Respondent] did not violate [MLRPC] 8.4(c) & (d) because she did not willfully and deliberately use clients' funds to pay her own expenses and there was no dishonesty involved. Rule 8.4(c) states that it is professional misconduct for a lawyer to engage in conduct involving dishonest[y], fraud, deceit or misrepresentation. Respondent did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. The expenses that Respondent paid with the funds [were] business related and [she] mistakenly believed that she could pay business expenses from her escrow account once the monies were earned.[11]

---

11. Respondent also details her attempts to reform her record-keeping, which we shall discuss below.

 Despite her assertions that the conceded misuse of client funds was unintentional or an honest mistake, we are unpersuaded by Respondent's exceptions. Respondent spent money from her escrow account on tax obligations, employee payroll, malpractice insurance, bar association dues, and herself. Misuse of the escrow account and client funds is a classic example of a violation of Rule 8.4(b)-(d). *See, e.g., Att'y Grievance Comm'n v. Agiliga*, 422 Md. 613, 621–22, 31 A.3d 103, 108 (2011) (finding violations where the attorney misused and failed to preserve client funds); *Att'y Grievance Comm'n v. Zuckerman*, 386 Md. 341, 374–75, 872 A.2d 693, 713 (2005) (finding a violation of MLRPC 8.4(d) for misappropriation of client funds and misuse of an attorney trust account); *Att'y Grievance Comm'n v. Nussbaum*, 401 Md. 612, 639, 642, 934 A.2d 1, 16, 18–19 (2007) (finding a violation of MLRPC 8.4(c) and (d) when an attorney withdrew client funds, including money for legal fees or expenses, from his escrow account for his own use, for the use of other clients, or for the use of a third party). It is clear under these facts that Respondent blatantly misappropriated client funds, and her attempts to excuse her conduct on grounds of mistaken belief and sloppy record keeping are insufficient. We conclude she has violated MLRPC 8.4(b)-(d).[12]

---

12. Respondent nominally takes exception to the violation of Maryland Rule 16–604, which provides:

> Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

Despite the nominal exception, Respondent effectively concedes a violation of this Rule by acknowledging "there was a time when the unearned funds of the clients were no longer in her escrow account due to mismanagement on her part[.]" Respondent's attempts to skirt this violation by saying it was not done intentionally are unpersuasive.

**Sanctions for Violation of MLRPC 1.15(a) and (c), 1.16(d), 8.4(b)-(d), Maryland Rules 16–604 and 16–609, and Section 10–306 of the Business Occupations and Professions Article**

■ For these violations, Petitioner recommends disbarment. Respondent, through counsel, recommends "no more than [a] 6 month suspension without proof of fitness and upon reinstatement [Respondent] would have a practice monitor for a period of two years, if the Court finds" violations of the MLRPC. This Court sanctions attorneys to protect the public and the public's confidence in the legal profession. *See, e.g., Att'y Grievance Comm'n v. Park,* 427 Md. 180, 46 A.3d 1153 (2009); *Att'y Grievance Comm'n v. Sucklal,* 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011). Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so. *See, e.g., Att'y Grievance Comm'n v. Usiak,* 418 Md. 667, 689, 18 A.3d 1, 14 (2011).

■ Petitioner's recommendation is supported by several cases in which we disbarred attorneys for similar conduct. We have held that "[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Att'y Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410, 419, 773 A.2d 463, 483, 488 (2001) (citations omitted) (attorney disbarred). In *Agiliga,* we disbarred an attorney for the previously cited misuse of and failure to preserve client funds. *See Agiliga,* 422 Md. at 624, 31 A.3d at 109–10. Misappropriation and misuse of client funds has warranted disbarment in numerous other cases. *See, e.g., Att'y Grievance Comm'n v. Stern,* 419 Md. 525, 559, 19 A.3d 904, 926 (2011) (disbarment for misuse of an escrow account); *Att'y Grievance Comm'n v. Palmer,* 417 Md. 185, 206, 216, 9 A.3d 37, 50, 55 (2010) (disbarment for improper transfer of client funds from a firm's escrow account); *Nussbaum,* 401 Md. at 648, 934 A.2d at 22 (disbarment for lawyers' misuse of escrow funds).

Respondent points us to numerous cases, contending that they counsel in favor of a less stringent sanction, but each is factually distinguishable. Respondent cites *David,* in which an attorney was suspended indefinitely for neglectful conduct regarding client funds and for being uncommunicative with clients and unresponsive to bar counsel's attempts to mediate the matter. *See Att'y Grievance Comm'n v. David,* 331 Md. 317, 323–24, 628 A.2d 178, 181 (1993). Unlike in *David,* however, Respondent here made willful misrepresentations with respect to the Danner matter: namely, telling Danner and the Fee Dispute Resolution Committee that her refund had been sent by money order when it had not. This same concern makes Respondent's citation of *Awuah* unpersuasive-in that case, the court specifically found no dishonesty, fraud, deceit, or misrepresentation. *See Att'y Grievance Comm'n v. Awuah,* 346 Md. 420, 433–34, 697 A.2d 446, 453 (1997).

The other cases cited by Respondent are inapposite as well. In *McIntire,* a mere reprimand was given, but that was in a matter arising from a fee dispute "without any intentional wrongdoing, deceit, or dishonesty[.]" *See Att'y Grievance Comm'n v. McIntire,* 286 Md. 87, 95, 405 A.2d 273, 278 (1979). In *McCulloch,* the attorney was suspended indefinitely, but in that case, unlike here, the hearing judge's findings on intent were ambiguous and "the hearing court had some doubt as to the level of the respondent's culpability." *See Att'y Grievance Comm'n v. McCulloch,* 397 Md. 674, 688–89, 919 A.2d 660, 668–69 (2007). No such doubts exist here.

Respondent asks that we consider mitigating factors, particularly "the absence of a dishonest or selfish motive and sickness of her [parents] that resulted in psychological, emotional and financial hardship." The hearing judge found that Respondent was "willful, dishonest and [committed] criminal conduct" and that she committed "a criminal act adversely reflecting on her honesty and trustworthiness[.]" Thus, the first part of her claimed mitigation will not fly.

With respect to her parents' illnesses, Respondent directs our attention to instances when this Court has imposed more

lenient sanctions when illness has been involved or when traumatic events have occurred in the attorney's life. *See Att'y Grievance Comm'n v. West,* 378 Md. 395, 418, 836 A.2d 588, 601 (2003); *Att'y Grievance Comm'n v. Breschi,* 340 Md. 590, 605, 667 A.2d 659, 666–67 (1995). We are cognizant of how very stressful and difficult life becomes when dealing with family illness, particularly the illnesses of aging parents. Yet, to condone an attorney's misappropriation of client funds because of such circumstances might well threaten the integrity of the profession. We will not adopt that unwise course of action.[13]

As we said in *Stern:*

It has long been settled that an attorney's misappropriation of funds entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. The default sanction for ethical violations involving intentional misappropriation, or other intentional dishonest conduct, is disbarment. (Citations and quotation marks omitted.)

*Stern,* 419 Md. at 558, 19 A.3d at 926.

The mitigating circumstances offered by Respondent do not alter the fundamental fact that she misappropriated funds from both clients. She still had not returned the retainer funds to Danner as of the hearing in the Circuit Court. Furthermore, she repeatedly lied to Danner about the status of those funds. This inaction and coverup was a consequence of her clear failure to properly maintain her escrow account according to the strictures of the applicable rules and statutes, which alone is a severe offense. The appropriate sanction here is disbarment. We do not find sufficient mitigation to avoid that sanction. Accordingly, we entered the June 12,

---

**13.** In *West,* it was the attorney's own illness. *See Att'y Grievance Comm'n v. West,* 378 Md. 395, 418, 836 A.2d 588, 601 (2003). And the illness had a causal connection to the misconduct, a finding not present here. *See id.* In *Breschi,* the traumatic events also "played a significant part" in the misconduct. *See Att'y Grievance Comm'n v. Breschi,* 340 Md. 590, 605, 667 A.2d 659, 666–67 (1995).

2012, *per curiam* order disbarring Zimmerman and awarding costs against her.

ORDER OF DISBARMENT IS AFFIRMED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DONYA TARRAINE ZIMMERMAN IN THE SUM OF THESE COSTS.