*Attorney Grievance Commission v. Lee Elliott Landau*, Misc. Docket AG No. 84, September Term 2012

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Lee Elliott Landau, violated Maryland Lawyers' Rules of Professional Conduct 1.3; 1.4; 1.15(a); 1.16(d); 8.1(b); 8.4(a), (b), (c), and (d); as well as Maryland Rule 16-609 and Maryland Code (1989, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article. The violations stemmed from Respondent's failure to remit to his client any portion of collections he made on the client's behalf pursuant to a contingency fee agreement. The appropriate sanction for Respondent's violations is disbarment.

Circuit Court for Montgomery County
Case No. 28464-M
Argued: March 7, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 84

September Term, 2012

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

LEE ELLIOTT LANDAU

---

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by Barbera, C.J.

---

Filed: April 21, 2014

Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action against Respondent, attorney Lee Elliott Landau, on February 22, 2013. *See* Md. Rule 16-751(a). The petition alleged violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in connection with Respondent's agreement to pursue his client's delinquent accounts receivable on a contingency fee basis and subsequent failure to remit to that client any portion of the funds he collected on the client's behalf. Specifically, the petition alleged that Respondent violated MLRPC 1.3 (diligence)[1]; MLRPC 1.4(a) and (b) (communication)[2]; MLRPC 1.15(a) (safekeeping property)[3]; MLRPC 1.16(d) (declining or terminating

---

[1] MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] MLRPC 1.4 provides:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information;
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[3] MLRPC 1.15(a) provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded,

(continued...)

representation)[4]; MLRPC 8.1(a) and (b) (bar admission and disciplinary matters)[5]; MLRPC

8.4(a), (b), (c), and (d) (misconduct)[6]; Maryland Rule 16-609 (prohibited transactions)[7];

---

[3](...continued)
and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

[4] MLRPC 1.16(d) provides:
    (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[5] MLRPC 8.1 provides:
    An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    (a) knowingly make a false statement of material fact; or
    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[6] MLRPC 8.4 provides, in relevant part:
    It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(continued...)

Maryland Code (1989, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article (hereinafter "BOP") (misuse of trust money)[8]; and BOP § 10-606(b) (penalties).[9]

On March 1, 2013, we designated the Honorable Nelson W. Rupp, Jr., of the Circuit Court for Montgomery County ("the hearing judge") to conduct an evidentiary hearing and render written findings of fact and conclusions of law. *See* Md. Rules 16-752(a) and 16-757(c). Respondent did not file a response to the Petition, timely or otherwise. Accordingly, on June 20, 2013, the hearing judge entered a default order against Respondent and the matter was set for a hearing on July 29, 2013. Respondent, notified of the default order and hearing date, neither moved to vacate the order nor appeared at the hearing. During the July 29 hearing, the hearing judge received evidence from Petitioner, acting through Assistant Bar

---

[6](...continued)
        (d) engage in conduct that is prejudicial to the administration of justice;
. . . .

[7] Maryland Rule 16-609 provides, in relevant part:
        a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.
        b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer . . . .

[8] BOP § 10-306 provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

[9] BOP § 10-606(b) provides, in relevant part: "A person who willfully violates any provision of Subtitle 3, Part I of this title . . . is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both."

Counsel. Thereafter, the hearing judge issued written findings of fact and conclusions of law, in which he concluded, by clear and convincing evidence, that Respondent had violated MLRPC 1.3; MLRPC 1.4; MLRPC 1.15(a); MLRPC 1.16(d); MLRPC 8.1(b); MLRPC 8.4(a), (b), (c), and (d); Maryland Rule 16-609; BOP § 10-306; and BOP § 10-606.

On March 7, 2014, we held oral argument, at which only Petitioner, acting through Assistant Bar Counsel, appeared. That day, we entered a per curiam order disbarring Respondent. We explain in this opinion the reasons for Respondent's disbarment.

I.

Based on the evidence accepted at the July 29 hearing, the hearing judge set forth findings of fact. We summarize them:

Respondent has been a member of the Bar of this Court since November 1, 1978. In March 2003, Cindy and Matthew Griswold, owners of American Marketing Services, Inc. (a company that does business as "The Merchandiser"), retained Respondent to collect delinquent accounts receivable on behalf of their company, filing collection actions whenever necessary. Respondent was to be paid on a contingency basis: he would keep as his fee one-third of any collections he made on behalf of The Merchandiser.

In March[10] 2011, Ms. Griswold received a telephone call from a client requesting a statement from The Merchandiser that her delinquent account had been paid in full

---

[10] Although the hearing judge found that the telephone call occurred in April, the record reflects that the call, in fact, took place in March.

subsequent to the filing of a collection action against her. Ms. Griswold looked into the matter and discovered that this client's account had been referred to Respondent for collection, Respondent had filed an action against the client, a judgment had been awarded, and the judgment had been satisfied. The Merchandiser, however, had never received any portion of the judgment from Respondent.

Ms. Griswold then searched the Maryland Judiciary Case Search website for various clients whose accounts were listed as delinquent. She discovered that lawsuits had been filed in many matters referred to Respondent and the cases had been settled, with judgments denoted as satisfied. Ms. Griswold believed that Respondent had collected approximately $78,773 from The Merchandiser's debtors on the company's behalf. Yet, The Merchandiser had received no funds from Respondent in connection with those claims.

From June through August 2011, Ms. Griswold requested from Respondent by telephone and email the status of various collection matters he was handling on behalf of The Merchandiser. Respondent remitted the collection amount, minus his fee, for approximately seven delinquent accounts but failed to respond as to over 200 other accounts.[11]

---

[11] The hearing judge described communications between The Merchandiser and Respondent during this period:

On June 22, 2011, an officer of The Merchandiser called and spoke with Respondent by telephone and requested the status of various collection matters Respondent was handling for The Merchandiser. The Respondent replied that he would provide a status update within a few days. However, he failed to do so. From June 22, 2011 through August 29, 2011, an officer of The Merchandiser telephoned Respondent's office on approximately twelve (12)

(continued...)

On August 29, 2011, Ms. Griswold sent a letter to Respondent demanding explanation of the status of all collection matters that had been referred to him, along with payment of any funds owed to The Merchandiser. Respondent did not reply to this letter. Ms. Griswold then retained counsel, John Sadler, to assist in obtaining a response, and any funds owed to The Merchandiser, from Respondent. On September 16 and October 7, 2011, Mr. Sadler sent letters to Respondent requesting the status of all collection accounts and demanding that he remit all funds owed to The Merchandiser. Respondent did not reply to those letters.

On October 28, 2011, Mr. Sadler sent a complaint letter to the Attorney Grievance Commission describing Respondent's failure to respond to The Merchandiser concerning the status of the collection accounts. On November 15 and 29, 2011, Bar Counsel sent letters to Respondent requesting a written response to Mr. Sadler's complaint. Respondent did not reply to those letters.

Bar Counsel obtained a subpoena for the records of Respondent's attorney trust account at Capital One Bank. On August 2, 2012, after reviewing the records, Bar Counsel sent a letter to Respondent requesting an accounting of numerous withdrawals he made from

---

[11](...continued)
separate occasions to inquire about the promised status update. The Respondent did not return any of those telephone calls and did not provide a status update.

The record clearly demonstrates that Respondent was not *wholly* unresponsive, and we therefore do not accept the hearing judge's findings insofar as to clarify this point. *See Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011) (citing *Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 205 (2010)) ("[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous.").

his attorney trust account without any notation as to the client matter for which the disbursements were made. Respondent did not reply to that letter.

Based upon these factual findings, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 1.3 (diligence); MLRPC 1.4 (communication); MLRPC 1.15(a) (safekeeping property); MLRPC 1.16(d) (declining or termination representation); MLRPC 8.1(b) (bar admission and disciplinary matters); MLRPC 8.4(a), (b), (c), and (d) (misconduct); Maryland Rule 16-609 (prohibited transactions); and BOP § 10-306 (misuse of trust money). The hearing judge wrote:

> This Court concludes that the Respondent, after being engaged to provide legal services to The Merchandiser, failed to act with reasonable diligence and promptness in carrying out that representation, thereby violating [MLRPC] 1.3. The Respondent also failed to keep his client reasonably informed about the status of his representation and failed to respond to his client's reasonable requests for information, thereby violating MLRPC 1.4. The Respondent repeatedly failed to respond to the numerous emails, telephone calls and letters from Ms. Griswold, other officers of The Merchandiser, and the company's attorney, Mr. Sadler, concerning the status of the two hundred (200) collection accounts Respondent was handling on behalf of The Merchandiser. Upon abandoning his representation of The Merchandiser, the Respondent violated MLRPC 1.16(d) by not giving reasonable notice to the client and by failing to take steps to the extent reasonably practicable to protect his client's interests, such as surrendering papers and property to which his client was entitled.
>
> Despite his collection, on behalf of The Merchandiser, of over $78,000[12] from debtors of The Merchandiser's outstanding accounts,

---

[12] This figure comes from a spreadsheet the hearing judge admitted into evidence, uncontested, at the July 29 hearing. The spreadsheet, prepared by The Merchandiser, set out all the company's delinquent accounts that had been referred to Respondent where court
(continued...)

Respondent never paid any portion of said funds to his client nor advised the company that he received such funds on its behalf. The Respondent kept all funds collected on behalf of The Merchandiser and failed to submit any portion of same to his client. The Respondent knowingly misappropriated his client's, The Merchandiser's, portion of the settlement funds received from numerous collection matters he settled on its behalf, thereby violating MLRPC 1.15(a) and 8.4(a), (b), and (c), Maryland Rule 16-609, and [BOP] §§ 10-306 and 10-606.[13]

The Respondent violated MLRPC 8.1(b) when he knowingly and repeatedly failed to respond to lawful demand for information from the office of Bar Counsel.

Taken in its totality, the Respondent's conduct was prejudicial to the administration of justice, and therefore violated MLRPC 8.4(d).

## **Mitigation**

The Respondent has provided no evidence that mitigates his misconduct.

## II.

In attorney discipline proceedings, this Court "has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013) (citing *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432,

---

[12](...continued)
records showed that judgment had been satisfied or settlement reached. The spreadsheet reflected accounts where Respondent had remitted a portion of the amount he presumably had collected, as well as those accounts where Respondent had remitted no portion of the amount he had collected. The amount outstanding for the matters in which Respondent had remitted nothing was $78,773.

[13] BOP § 10-606 sets out the penalties for violations of the provisions of the Article governing attorney trust accounts. We infer from the hearing judge's conclusion that he determined, to a clear and convincing standard of proof, that Respondent's conduct would constitute a violation of BOP § 10-306, thus amounting to a misdemeanor under § 10-606.

448 (2009)).  We accept the hearing judge's findings of fact as correct unless shown to be clearly erroneous.  *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011) (citing *Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 205 (2010)).  If no exceptions are filed, we may treat the findings of fact as established for the purpose of determining the appropriate sanction.  Md. Rule 16-759(b)(2)(A).  We review *de novo* the hearing judge's conclusions of law.  Md. Rule 16-759(b)(1); *Page*, 430 Md. at 626.  This is true even if, as in this case, a default order was entered against the respondent by the hearing judge.  *See Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 653 (2003).  The ultimate decision as to whether an attorney has engaged in professional conduct lies with this Court.  *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88 (1994).

III.

Neither Respondent nor Bar Counsel filed exceptions to the hearing judge's findings of fact.  We therefore treat those findings—with the exception of the finding that Respondent "never" responded to Ms. Griswold—as established.  *See* Md. Rule 16-759(b)(2)(A), *supra* note 11.  Likewise, neither party filed exceptions to the hearing judge's conclusions of law.  Based upon our *de novo* review of the record in this case, we agree with the hearing judge, for the reasons stated in his written conclusions of law, that Respondent violated MLRPC 1.3; MLRPC 1.4; MLRPC 1.15(a); MLRPC 1.16(d); MLRPC 8.1(b); MLRPC 8.4(a), (b), (c), and (d); Maryland Rule 16-609; and BOP § 10-306.

The task that remains, then, is for us to determine the appropriate sanction for

Respondent's misconduct. Respondent did not submit a recommendation for sanction. Bar Counsel, for his part, recommends disbarment. Bar Counsel contends that, absent "compelling extenuating circumstances," which the hearing judge did not find were present in this case, the appropriate sanction for the misappropriation of entrusted funds is disbarment.

The severity of the sanction for an attorney's misconduct "depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33 (2006) (citations omitted). As we consider the appropriate sanction, we bear in mind that the purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather, "to protect the public and the public's confidence in the legal profession." *See Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012). "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

The gravamen of Respondent's misconduct is his misappropriation of funds he collected on his client's behalf. As we have often repeated, "the misappropriation of entrusted funds is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161 (2005) (internal quotation omitted). Such a sanction is warranted because attorneys

must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Id.* (quoting *Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345 (1991)). Here, Respondent, entrusted with the collection of thousands of dollars owed to his client, neither administered nor accounted for those funds. Instead, he withdrew the funds from his attorney trust account for his own use, without authorization to do so.

In *Attorney Grievance Commission v. Herman*, we disbarred an attorney for violations similar to those committed by Respondent. 380 Md. 378, 404, 401 (2004). In that case, a collection agency retained the respondent, then practicing law in the State of New York, to pursue small claims on its behalf. 380 Md. at 384. Under the arrangement, the respondent was authorized to deposit the funds he collected for the agency in his attorney trust account, then remit those funds, minus his fee, to the client. *Id.* at 385. At some point, the respondent began to experience "office management" problems, resulting in his failure to provide to his client regular disbursements and reports. *Id.* at 385-86. He then moved to Maryland. *Id.* at 387. After the move, the respondent continued to collect on the agency's debts but failed to remit funds he received or provide reports of those collections for over one year, during which period he continued to withdraw funds from the trust account for his own use. *Id.* at 388-89. Imposing the sanction of disbarment, we found clear and convincing evidence that the respondent "intentionally and willfully used funds for a purpose other than the purpose

-11-

authorized by the client," which "reflected on his honesty, trustworthiness, and fitness as a lawyer." *Id.* at 404, 401. *See also Attorney Grievance Comm'n v. Mitchell*, 386 Md. 386, 401, 392-93 (2005) (disbarring attorney who, *inter alia*, failed to advise his client, the plaintiff in a personal injury lawsuit, that he had received a settlement proceeds check from the defendant, instead appropriating those proceeds for personal use).

In sum, Respondent misappropriated client funds when he failed to remit to The Merchandiser two-thirds of the collections he made on the company's behalf. Our cases are clear that, absent compelling extenuating circumstances, such misconduct compels the sanction of disbarment. If there are any circumstances that may explain Respondent's actions, we have been made aware of none. Accordingly, disbarment is appropriate. It is for this reason that we entered the March 7, 2014, per curiam order disbarring Respondent.