*Attorney Grievance Commission v. Jason Robin Gelb*, Misc. Docket AG No. 36, September Term 2013

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Jason Robin Gelb, violated Maryland Lawyers' Rules of Professional Conduct 1.1; 1.3; 1.4(a); 1.4(b); 1.5(a); 1.5(c); 1.15(a); 1.15(c); 1.15(d); 8.4(a); 8.4(c); 8.4(d); as well as Maryland Rules 16-606.1 and 16-609, and Maryland Code (1989, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article. The violations stemmed from Respondent's misappropriation of his clients' funds and failure to competently and diligently represent his clients. The appropriate sanction for Respondent's violations is disbarment.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 36

September Term, 2013

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JASON ROBIN GELB

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Barbera, C.J.

Filed:   October 22, 2014

On August 6, 2013, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action (the "Petition") against Respondent, attorney Jason Robin Gelb. The Petition alleged violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in connection with Respondent's misappropriation of his clients' funds and failure to represent his clients competently and diligently. Specifically, the Petition alleged that Respondent violated MLRPC 1.1 (competence); MLRPC 1.3 (diligence); MLRPC 1.4(a) and (b) (communication); MLRPC 1.5(a) and (c) (fees); MLRPC 1.15(a), (c), and (d) (safekeeping property); MLRPC 8.4(a), (c), and (d) (misconduct); Maryland Rule 16-606.1 (attorney trust account record-keeping); Maryland Rule 16-609 (prohibited transactions); and Maryland Code (1989, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article (hereinafter "BOP § 10-306") (misuse of trust money).

On August 12, 2013, this Court designated the Honorable J. Barry Hughes of the Circuit Court for Carroll County (the "hearing judge") to conduct an evidentiary hearing and render written findings of fact and conclusions of law. Respondent was served with process, in compliance with Maryland Rule 16-753, but did not file a response to the Petition, timely or otherwise. Accordingly, on October 7, 2013, the hearing judge entered a default order against Respondent and the matter was set for a hearing to be held on December 13, 2013. Respondent neither moved to vacate the order nor appeared at the hearing.

During the December 13, 2013 hearing, the hearing judge heard evidence from Petitioner, along with three complainants testifying for Petitioner—Alan Jones, Jr., Calvin Jones, and Stephanie Dress. Thereafter, the hearing judge issued written findings of fact and conclusions of law, in which he concluded, by clear and convincing evidence, that Respondent had violated MLRPC 1.1; MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.5(a) and (c); MLRPC 1.15(a), (c), and (d); MLRPC 8.4(a), (c), and (d); Maryland Rule 16-606.1; Maryland Rule 16-609; and BOP § 10-306. No exceptions were filed.

On September 4, 2014, we held oral argument, at which only Petitioner appeared.

I.

Based on the evidence presented at the December 13, 2013 hearing, the hearing judge set forth findings of fact, which we summarize:

Respondent was admitted to the Maryland Bar on June 13, 2006. In 2010, Respondent was practicing law at the Law Offices of Jason Gelb in Towson, Maryland. Upon information and belief, Respondent is no longer practicing law in this office.

*Representation of Alan Jones, Jr.*

In April 2010, Alan Jones, Jr. ("A. Jones") retained Respondent to initiate collection actions against debtors to his business, 410 Bail Bonds, LLC ("410 Bail Bonds"). Respondent orally agreed to be paid on a contingency basis, but he failed to memorialize this in his written retainer agreement. Respondent also agreed to provide A. Jones with

monthly reports of the funds recovered from the collection actions.   Although Respondent initially provided A. Jones with the reports, Respondent later repeatedly failed to do so.

On April 14, 2010, A. Jones paid Respondent $500 to cover court costs.   On or about July 28, 2011, and on or about October 12, 2011, Respondent issued A. Jones remittance checks from his operating account for $1051.23 and $973.88, respectively.

Respondent failed to pursue three of A. Jones's cases in the District Court of Maryland, sitting in Baltimore County, against obligors of 410 Bail Bonds.   The cases were dismissed for failure to prosecute, resulting in a loss of $6,000 in money owed by 410 Bail Bonds's obligors that 410 Bail Bonds was unable to recover.

*Representation of Calvin Jones*

In 2009, Calvin Jones ("C. Jones") retained Respondent to collect debts owed to C. Jones's companies, Mr. Bail Bonds and Elite Bail Bonds.   Respondent agreed to be paid on a contingency basis, but he failed to memorialize this in a retainer agreement. Respondent also said that he would issue C. Jones remittance checks from the collection cases and send him monthly reports of the funds collected.   On March 30, 2011, Respondent issued C. Jones a remittance check from his operating account for $5,126.58.

At some point during Respondent's representation, Respondent issued C. Jones a check from his trust account that was declined for insufficient funds.   At another point, Respondent issued C. Jones a post-dated check.   Respondent also repeatedly failed to

3

communicate with C. Jones about the status of his cases, and three of Elite Bail Bonds's cases were dismissed due to Respondent's failure to prosecute.

*Representation of Shawn Potochney*

In 2010, Shawn Potochney ("Mr. Potochney") retained Respondent to initiate collection actions against the debtors of his company, Last Stop Bail Bonds ("Last Stop"). Respondent orally agreed to receive a 25% contingency fee, but failed to memorialize this in his retainer agreement and, instead, later charged Mr. Potochney a 33% fee for the cases in which Respondent collected funds.

During the course of representation, Respondent failed to provide Mr. Potochney with receipts for the payments Respondent received from Last Stop's collection cases. Respondent also ignored Mr. Potochney's request that Respondent provide him with monthly reports of the collections.

Beginning in 2011, Respondent issued approximately seven remittance checks to Mr. Potochney. Respondent instructed Mr. Potochney not to deposit one of the remittance checks because Respondent had insufficient funds in his account. After late 2012, Respondent had no further contact with Mr. Potochney.

*Representation of Dwayne Holley*

In or about October 2009, Dwayne Holley ("Mr. Holley") retained Respondent to represent him in five criminal and civil actions. Mr. Holley paid Respondent $700 for his legal services, $500 of which he instructed Respondent to use for Mr. Holley's bail review

4

hearing. Although Respondent assisted Mr. Holley with his bail review hearing, Respondent failed to represent Mr. Holley in several other pending actions for which Respondent was retained. Mr. Holley repeatedly attempted to contact Respondent, but Respondent failed to respond. Mr. Holley has been unable to secure new counsel or receive his files from Respondent.

On March 14, 2013, Petitioner sent Respondent a certified letter notifying him that the present disciplinary matter had been docketed. On March 15, 2013, Respondent signed the return receipt card acknowledging his receipt of the letter, but he failed to respond to Assistant Bar Counsel's requests for information regarding Mr. Holley's complaint.

*Representation of Stephanie Dress*

In October 2010, Stephanie Dress ("Ms. Dress") retained Respondent to represent her in a personal injury case arising from an automobile accident. From March to November 2011, Ms. Dress repeatedly attempted to contact Respondent, but she frequently had difficulty reaching him.

In or about August 2011, Respondent settled with Geico Insurance Company for $20,000 on behalf of the negligent driver in Ms. Dress's accident. On August 22, 2011, Respondent issued Ms. Dress a settlement check for $8,904.25. That same day, Ms. Dress signed Respondent's settlement memorandum, which listed the distributions that Respondent made to Ms. Dress's medical providers from the recovery. The memorandum

noted that a payment of $1,462.30 was issued to Advanced Radiology. Respondent, however, did not pay Advanced Radiology until nearly six months later, on February 17, 2012. Respondent's delay caused Advanced Radiology to refer the debt to a collection agency, which subsequently instituted a collection action against Ms. Dress, negatively impacting her credit score.

During the representation, Respondent also began negotiations with Ms. Dress's insurance carrier, but he failed to recover any funds on her behalf. Instead, Respondent largely ceased communications with Ms. Dress after November 2011 and failed to respond to Ms. Dress's repeated requests for her case file in order to pursue her claim against her insurance carrier. Respondent also failed to respond to Bar Counsel's requests for information regarding the present disciplinary matter.

***

Based upon these factual findings, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 1.1 (competence); MLRPC 1.3 (diligence); MLRPC 1.4(a) and (b) (communication); MLRPC 1.5(a) and (c) (fees); MLRPC 1.15(a), (c), and (d) (safekeeping property); MLRPC 8.4(a), (c), and (d) (misconduct); Maryland Rule 16-606.1 (attorney trust account record-keeping); Maryland Rule 16-609 (prohibited transactions); and BOP § 10-306 (misuse of trust money).

II.

6

In attorney discipline proceedings, this Court "has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). We accept the hearing judge's findings of fact as correct unless shown to be clearly erroneous. *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011). Neither Respondent nor Bar Counsel filed exceptions to the hearing judge's findings of fact. We therefore treat those findings as established. *See* Md. Rule 16-759(b)(2)(A).

We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1); *Page*, 430 Md. at 626. This is true even if, as in this case, a default order was entered against the respondent by the hearing judge. *See Attorney Grievance Comm'n v. Landau*, 437 Md. 641, 650 (2014). The ultimate decision as to whether an attorney has engaged in professional misconduct lies with this Court. *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014).

III.

Neither party filed exceptions to the hearing judge's conclusions of law. Based upon our *de novo* review of the record, we agree with the hearing judge that Respondent violated MLRPC 1.1; MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.5(a) and (c); MLRPC 1.15(a), (c), and (d); MLRPC 8.4(a), (c), and (d); Maryland Rule 16-606.1; Maryland Rule 16-609; and BOP § 10-306.

*Failure to Diligently Represent and Communicate with Clients*

7

MLRPC 1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." This Court has held that "an attorney violates MLRPC 1.3 when he/she fails to pursue his/her client's case by not prosecuting the claim after filing the complaint." *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 320 (2012); *see also Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 253−54 (2013) (holding that an attorney violated MLPRC 1.3 by failing to pursue a claim on his client's behalf); *Attorney Grievance Comm'n v. Patterson,* 421 Md. 708, 737 (2011) (stating that a lawyer's failure to prosecute a claim demonstrated "incompetence and insufficient diligence in the matter" in violation of MLRPC 1.3).

MLRPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" In *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 222 (2006), we explained that an attorney's "failure to act on the client's case for over three years and failure to expedite litigation, to the client's detriment, is conduct prejudicial to the administration of justice."

Respondent filed collection cases on behalf of A. Jones and C. Jones, but he failed to prosecute several of the claims. As a result, "six collections cases in the District Court for Baltimore County were dismissed due to Respondent's lack of prosecution." Respondent also failed to represent Mr. Holley in the all of the matters for which Respondent was hired. We hold that Respondent's failure to pursue diligently his clients'

cases constitutes a violation of MLRPC 1.3, and is prejudicial to the administration of justice in violation of MLRPC 8.4(d).

MLRPC 1.4(a) states, in relevant part, that a lawyer shall "keep the client reasonably informed about the status of the matter[, and] promptly comply with reasonable requests for information[.]" MLRPC 1.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." We have held that "violations of MLRPC 1.3 can be . . . closely linked to violations of MLRPC 1.4." *Attorney Grievance Comm'n v. Pinno*, 437 Md. 70, 80 (2014) (internal quotations and citations omitted).

The hearing judge found that "Respondent initially began to discuss the complainants' cases and as time progressed, failed to communicate with the complainants regarding information about their individual and company cases." In particular, Respondent did not have any contact with Mr. Potochney after late 2012, and he repeatedly failed to return Ms. Dress's calls or respond to Mr. Holley's requests for information. Such conduct violates MLRPC 1.4(a). Respondent's violation of MLRPC 1.3, discussed above, also constitutes a violation of MLRPC 1.4(a) because Respondent failed to communicate with A. Jones and C. Jones on their pending claims that were subsequently dismissed for lack of prosecution. Respondent's lack of communication denied the complainants the opportunity to make informed decisions regarding their representation, in violation of MLRPC 1.4(b).

9

*Unreasonable Fees*

MLRPC 1.5(a) provides, in relevant part, that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." "Any charge by a lawyer in excess of [the amount to which the lawyer and client have agreed] is plainly impermissible and thus excessive or unreasonable" in violation of MLRPC 1.5(a). *Attorney Grievance Comm'n v. Van Nelson*, 425 Md. 344, 359−60 (2012) (internal quotations omitted). MLRPC 1.5(c) provides, in relevant part, that "[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined[.]"

Respondent failed to memorialize in writing his contingency fee agreements with A. Jones, C. Jones, and Mr. Potochney, in violation of MLRPC 1.5(c). Further, as the hearing judge found, "Respondent initially agreed to charge Mr. Potochney a twenty-five percent (25%) contingent fee . . . , but he charged Mr. Potochney a thirty-three percent (33%) fee for those matters in which he collected funds." We hold that, because Respondent charged Mr. Potochney more than the 25% fee in their original agreement, Respondent's fee was excessive and unreasonable in violation of MLRPC 1.5(a).

*Misappropriation of Client Funds*

MLRPC 1.15(a) and (c) states, in relevant part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and

10

records shall be created and maintained in accordance with the Rules in that Chapter.

***

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

Respondent issued remittance checks to A. Jones and Elite Bail Bonds from his operating account, instead of his trust account, improperly co-mingling his funds with his clients' funds in violation of MLRPC 1.15(a). Also, as the hearing judge concluded, Respondent failed to hold his clients' funds in his trust account, in violation of MLRPC 1.15(c).

Maryland Rule 16-609 provides that "[a]n attorney or law firm may not borrow or pledge any funds required by the [Maryland Rules] to be deposited in an attorney trust account, . . . or use any funds for any unauthorized purpose." Similarly, BOP § 10-306 states, "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Because "the statute and the Rule have the same requirement," a violation of Rule 16-609 is a violation of BOP § 10-306. *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 30 (2007).

MLRPC 8.4(c) states, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The "misappropriation of client or third-party funds violates [MLRPC] 8.4(c)." *Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 129 (2012).

11

Respondent issued a trust account check to C. Jones that was declined for insufficient funds, and instructed Mr. Potochney not to deposit a check because he had insufficient funds in his account for the check to clear. In *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 484 (1996), this Court held that, "[w]hen Respondent's escrow account balance fell below the amount required to satisfy the obligations due to [his clients], and he failed to provide a satisfactory explanation, he misappropriated their funds." Because Respondent did not provide an adequate explanation as to why his trust account had insufficient funds, we conclude that Respondent misappropriated the funds entrusted to him. We hold that this misappropriation constitutes a violation of Maryland Rule 16-609, BOP § 10-306, and MLRPC 8.4(c).

MLRPC 1.15(d) provides that "a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property." Respondent received a settlement check for Ms. Dress's matter in August 2011. Respondent, however, did not pay Ms. Dress's medical bill, as he had agreed, until February 2012. Respondent's delayed issuance of the funds owed to the medical provider constitutes a violation of MLRPC 1.15(d).

Further, Respondent misappropriated the funds owed to the medical provider in violation of Maryland Rule 16-609, BOP § 10-306, and MLRPC 8.4(c). In *Goodman*, the respondent "could not provide any evidence to refute the [Attorney Grievance

12

Commission's] claims that the medical bills were unpaid." 426 Md. at 130. We held that "[a] permissible inference is that the respondent misappropriated funds that belonged rightfully to the creditors, which left an insufficient balance to pay his clients' medical bills." *Id.* Similarly, here, we can infer that, because Respondent did not pay Ms. Dress's medical bills until months after he had received her settlement funds, Respondent misappropriated the funds.

Respondent's misappropriation of funds also constitutes a violation of MLRPC 8.4(d). *See Attorney Grievance Comm'n v. Webster*, 402 Md. 448, 467 (2007) (concluding that "misappropriation of client or third party funds [is] 'prejudicial to the administration of justice' in violation of [MLRPC] 8.4(d)[]'").

*Improper Record-Keeping*

MLRPC 1.1 states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." We have held that "lackadaisical handling of trust funds [and an] unreliable recordkeeping system . . . rise to the level of incompetent representation." *Goff*, 399 Md. at 18.

MLRPC 1.15(a) states, in pertinent part, that "[c]omplete records of the account funds and of other property shall be kept by the lawyer[.] . . ." A Rules Committee Comment to MLRPC 1.15 notes that "[a] lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice . . . and comply with

13

any other record-keeping rules established by law or court order." *See Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 657 (2006) (citing the Comment). Maryland Rule 16-606.1 provides that an attorney shall create and maintain "[a] record for each client matter in which the attorney receives funds in trust[.]"

The hearing judge concluded that "Respondent initially provided records of transactions for the complainants. However, beginning in 2011, Respondent began to improperly maintain his recordkeeping. After mid-2012, he failed altogether to keep client records for the complainants." Respondent's failure to properly maintain records of the funds he collected on his clients' behalf constitutes a violation of MLRPC 1.15(a) and Maryland Rule 16-606.1. Respondent's lack of proper record-keeping, combined with his mishandling of the funds in his attorney trust account, discussed above, rise to a level of incompetent representation in violation of MLRPC 1.1.

*Violations of the MLRPC*

MLRPC 8.4(a) states, "[i]t is professional misconduct for a lawyer to (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct[.]" Based on our above conclusions that Respondent violated MLRPC 1.1; MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.5(a) and (c); MLRPC 1.15(a), (c), and (d); and MLRPC 8.4 (c), and (d), we also hold that Respondent violated MLRPC 8.4(a).

IV.

14

We turn now to the appropriate sanction for Respondent's misconduct. Respondent did not submit a recommendation for sanction. Bar Counsel recommends disbarment. Bar Counsel contends that, absent "compelling extenuating circumstances," which the hearing judge did not find were present in this case, "[i]ntentional misappropriation of funds entrusted to an attorney's care" should result in disbarment.

The severity of the sanction for an attorney's misconduct "depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33 (2006) (citations omitted). The purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather, "to protect the public and the public's confidence in the legal profession[,]" *see Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012). "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

The gravamen of Respondent's misconduct is the misappropriation of funds he collected on his clients' behalf. As discussed above, we have concluded that, because Respondent had insufficient funds to pay C. Jones and Mr. Potochney the money owed to them, and he failed to promptly pay Ms. Dress's medical bill, Respondent misappropriated both client and third-party funds. Respondent, as the only name on both his operating and

trust account, was solely responsible for the funds and had knowledge of all account activity.

We are consistent in holding that the "misappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Zimmerman*, 428 Md. at 144 (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410 (2001)). That sanction is warranted because attorneys

> must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Landau*, 437 Md. at 652 (quoting *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345 (1991)).

While the "misappropriation of client funds alone will result in disbarment in the absence of compelling extenuating circumstances[,]" *Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 566 (2005), here Respondent's misconduct in misappropriating funds is exacerbated by multiple other violations, including his failure to provide competent representation to his clients, his failure to prosecute diligently his clients' claims, and his failure to communicate adequately with his clients on their respective matters. These combined violations create an even stronger case for disbarment. *See Attorney Grievance Comm'n v. Page*, 430 Md. 602, 637 (2013) (holding disbarment appropriate after

considering the aggravating factor that the respondent "committed multiple offenses");

*Attorney Grievance Comm'n v. Bernstein*, 363 Md. 208, 229 (2001) (holding disbarment appropriate where the respondent's misappropriation of funds was "compounded by other numerous rule violations").

In light of our precedent, it is clear that Respondent's misconduct warrants disbarment, absent compelling extenuating circumstances. Respondent did not offer, nor did the hearing judge find, any mitigating circumstances, compelling or otherwise, that would justify a lighter sanction. Therefore, disbarment is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JASON ROBIN GELB**