*Attorney Grievance Commission of Maryland v. Joseph M. Kum*, Misc. Docket AG No. 73, September Term 2012

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Joseph M. Kum, violated the Maryland Lawyers' Rules of Professional Conduct 1.4(a), 1.15(a) and (d), 1.16(d), 8.1(b), and 8.4(c) and (d), as well as Maryland Rule 16-607. The violations stemmed from Respondent's misappropriation of client funds, failure to properly maintain records of a trust account, failure to maintain reasonable communication with his client, and failure to respond to lawful demands for information. The appropriate sanction for Respondent's violations is disbarment.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 73

September Term, 2012

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JOSEPH M. KUM

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,
JJ.

Opinion by Barbera, C.J.

Filed: October 28, 2014

Petitioner, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, has filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Joseph M. Kum. The Petition alleged several violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in connection with two matters involving, among other misconduct, the misappropriation of client funds.

We designated the Honorable Krystal Q. Alves of the Circuit Court for Prince George's County (the "hearing judge") to conduct the hearing, make findings of fact, and draw conclusions of law. Respondent was served with process pursuant to Maryland Rule 16-753.[1] Respondent did not file a response to the Petition, timely or otherwise. On June 28, 2013, the hearing judge entered a default order against Respondent. Respondent was served with the default order, notice of the initial hearing date, and, upon its postponement, the subsequent hearing date. Respondent did not seek to vacate the order of default.

The hearing was held on September 6, 2013. Respondent did not appear at the hearing. The Commission presented evidence, including the testimony of four witnesses. On September 18, 2013, the hearing judge issued written findings of fact and conclusions of law in which she concluded, by clear and convincing evidence, that Respondent had

---

[1] Maryland Rule 16-753 provides, in pertinent part, that "[i]f after reasonable efforts the attorney cannot be served personally, service may be made upon the employee designated by the Client Protection Fund of the Bar of Maryland pursuant to Rule 16-811.4 (a)(12), who shall be deemed the attorney's agent for receipt of service." Following reasonable efforts to obtain personal service on Respondent, this Court, having found good cause, granted the Commission's motion to permit service to be made upon Janet Moss, Executive Director of the Client Protection Fund, as the agent of Respondent for receipt of service under this Rule.

violated MLRPC 1.4(a) (communication); MLRPC 1.15(a) and (d) (safekeeping property); MLRPC 1.16(d) (declining or terminating representation); MLRPC 8.1(b) (bar admission and disciplinary matters); MLRPC 8.4(c) and (d) (misconduct); and Maryland Rule 16-607 (commingling of funds). No exceptions were filed.

On September 9, 2014, this Court heard argument, at which only the Commission appeared. The following day, we entered a per curiam order disbarring Respondent. We explain in this opinion the reasons for that action.

## I. Hearing Judge's Findings of Fact

Based on the evidence accepted at the September 6, 2013 hearing, the hearing judge set forth the following findings of fact, which we summarize.

Respondent has been a member of the bar of this Court since December 18, 1996. Respondent maintained a law office with the firm of Amity, Kum & Suleman ("AKS") in Prince George's County, Maryland. As of the date of the hearing, Respondent no longer maintains an office for the practice of law in the State of Maryland.

### Commingling of Trust Account Funds

On May 2, 2011, the Commission received notification of an overdraft on an attorney trust account maintained by Respondent at BB&T Bank, titled "Law Offices of Joseph M. Kum IOLTA Acct." ("IOLTA Account"). AKS maintained a separate attorney trust account at M&T Bank, titled "Amity, Kum and Suleman, Attys." (the "AKS Trust Account"). Respondent's IOLTA Account, however, was operated solely by him. In a letter dated May 6, 2011, the Commission asked Respondent to provide an explanation for the overdraft, as well as financial records for the IOLTA Account.

- 2 -

Respondent replied with a letter dated May 18, 2011,[2] in which he explained that a check for $4,172, deposited in settlement of a client's personal injury matter, had been returned by the issuing bank due to a missing endorsement. According to Respondent, after he learned of this fact on April 27, 2011, he transferred funds from his general account to cover an IOLTA Account check he had written to a client. Respondent provided records to show two in-branch transfers on April 27, 2011, from his general account to his IOLTA Account in the amounts of $1,750 and $700, respectively. After obtaining the required endorsement, Respondent re-deposited the check into the IOLTA Account.

In two letters dated May 23, 2011 and June 29, 2011, the Commission requested verification that Respondent had removed the transferred funds of $1,750 and $700 from his IOLTA Account after he successfully re-deposited the settlement check for $4,172. When Respondent failed to reply to either request, the Commission informed Respondent on July 22, 2011 that it had docketed a complaint against him. The Commission directed Respondent to provide the Commission with the requested verification.

Respondent replied to the Commission's letter on July 30, 2011. He acknowledged receipt of the docketed complaint and provided documentation that the re-deposited settlement check of $4,172 had cleared on May 3, 2011, but he offered no evidence that he had removed the previously-transferred funds of $1,750 and $700 from his IOLTA Account. Instead, Respondent acknowledged a check for $1,625 that was issued from the IOLTA Account to "ACC Telecom" on April 26, 2011, and he explained that he also made

---

[2] Respondent's letter was actually dated "May 18, 2010," but the Commission understood this to be an error.

transfers from his general account to cover that check. The "ACC Telecom" check contained no notation identifying it as relating to a client matter.

Sometime around August 2011, Respondent left the country to travel to Ghana. Jamila Nandule-Cook ("Ms. Nandule-Cook"), an intern at AKS at the time, testified that Respondent said that he was traveling for business and would return later in the year. Fatai Suleman ("Mr. Suleman"), a member of AKS, testified that Respondent failed to provide any details regarding his business trip or offer any instructions on his clients' pending legal matters.

In a letter dated September 19, 2011, the Commission again asked Respondent for documentation verifying that the previously-transferred checks had been removed from the IOLTA Account, and to explain the issuance of the "ACC Telecom" check. The Commission gave Respondent until October 6, 2011, to respond. Ms. Nandule-Cook, in contact with Respondent regarding the Commission's request, asked for two extensions on Respondent's behalf. On the second occasion, Ms. Nandule-Cook informed the Commission that unavoidable circumstances had postponed Respondent's return to the United States until November 18, 2011. The Commission granted an extension until December 5, 2011. Respondent, however, did not respond to the Commission's request.

Respondent evidently had not returned to the United States as of the September 6, 2013 hearing. On March 15, 2012, Respondent was administratively suspended from practicing law in Maryland for the non-payment of his 2011-2012 annual assessment due to the Client Protection Fund of the Bar of Maryland. In May 2012, Mr. Suleman and N. David Etokebe, another member of AKS, took steps to dissolve AKS.

*Representation of David Miller*

In January 2008, David Miller ("Mr. Miller") and three other individuals retained AKS to represent them in an employment-related harassment claim against the Town of Riverdale Park, in Prince George's County, Maryland. On January 3, 2008, Mr. Miller signed a contingent fee agreement providing for an attorney's fee of 33.3% of any settlement recovery. Although Mr. Suleman actively participated in the representation of Mr. Miller, Respondent was the initial attorney contacted by the clients, and he had primary responsibility for the representation.

In February 2009, the four clients settled their claims for $200,000, or $50,000 per client, which was deposited into the AKS Trust Account. Each client received a settlement disposition statement indicating that he would receive a net distribution of $33,350, following the deduction of an attorney's fee of $16,650 per client.

At the time of the settlement, Mr. Miller was incarcerated in North Carolina. Accordingly, he signed a power of attorney authorizing Respondent to receive and hold his settlement proceeds in trust. Instead of maintaining the funds in the AKS Trust Account, Respondent wrote a check from that account for $33,350, made payable to "Law Offices Joseph M. Kum Trust Account," with a notation that it was for Mr. Miller.

Mr. Miller testified that he received an initial distribution of $3,333 at or about the time the settlement was finalized. Mr. Miller continued to receive from Respondent periodic transfers totaling an additional $6,000. Mr. Miller also authorized Respondent to disburse portions of his settlement proceeds to Donna Williams ("Ms. Williams"), the

mother of Mr. Miller's child. Ms. Williams received three separate payments from Respondent totaling $5,500.

In early November 2011, Mr. Miller was released from incarceration and returned to Maryland. On November 8, 2011, he requested the balance of his settlement proceeds from AKS. Respondent was out of the country at the time, so Mr. Suleman e-mailed Respondent, notifying him that Mr. Miller sought his remaining recovery and requesting that Respondent contact Mr. Miller as soon as possible.

On November 14, 2011, Ms. Williams received another wire transfer of $2,000 from Respondent and, on December 12, 2011, received an additional $5,000. Neither Mr. Miller nor Ms. Williams received any additional disbursements after December 12, 2011, and Mr. Miller had no further contact with Respondent.

In sum, Mr. Miller received $9,333 and Ms. Williams received $12,500 from Respondent, for a total of $21,833. Respondent never did disburse the remaining $11,517 due to Mr. Miller, nor did Respondent ever respond to Mr. Miller's request for an accounting of those funds.

In February 2012, Mr. Miller filed a complaint against Respondent with the Commission. On March 19, 2012, the Commission wrote to Respondent requesting a response to Mr. Miller's complaint. Respondent did not reply to the Commission's request. The Commission spoke with Judith Kum ("Ms. Kum"), Respondent's wife, on June 21, 2012. Ms. Kum told the Commission's investigator that Respondent was still in Ghana, and she did not know when he planned to return.

II. Hearing Judge's Conclusions of Law

The hearing judge concluded, in connection with Respondent's handling of his IOLTA Account, that he had violated MLRPC 1.15(a) by "fail[ing] to create and maintain records concerning his BB&T trust account in accordance with the Rules in Title 16, Chapter 600 of the Maryland Rules." The hearing judge concluded that Respondent violated MLRPC 8.1(b) by failing to respond to Bar Counsel's September 19, 2011 letter, receipt of which he had acknowledged through his intern, Ms. Nandule-Cook. The hearing judge also concluded that, "[w]hen [Respondent] transferred funds in the amounts of $1,750 and $700 from his personal account to his BB&T trust account[,]" he "was depositing personal funds into the account[,]" which, in addition to "his failure to remove such funds promptly and his apparent use of the funds to cover the $1,625 check written to 'ACC Telecom,'" constituted a violation of Maryland Rule 16-607.

In connection with Respondent's representation of Mr. Miller, the hearing judge concluded that Respondent violated MLRPC 1.4(a), because he "did not keep Mr. Miller reasonably informed and failed to comply with Mr. Miller's reasonable requests for information concerning the status of his trust money after Mr. Miller was released from incarceration in November 2011." The hearing judge also concluded that, by failing to respond to Mr. Miller's request for the balance of the funds that Respondent should have been holding in trust, "Respondent failed to safeguard client funds belonging to Mr. Miller in accordance with MLRPC 1.15(a)." Respondent violated MLRPC 1.15(d) by failing to "deliver[] the balance of the funds to which Mr. Miller was entitled and by failing, upon Mr. Miller's request, to render promptly a full accounting regarding the balance of the settlement proceeds[.]" Furthermore, by traveling to Ghana without "distribut[ing] the full

- 7 -

remaining balance of Mr. Miller's settlement proceeds," Respondent violated MLRPC 1.16(d). The hearing judge also concluded that Respondent violated MLRPC 8.4(c) and (d) by knowingly and willfully misappropriating the balance of Mr. Miller's settlement proceeds in the amount of $11,517.

## III. Standard of Review

In attorney discipline proceedings, this Court "has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). We accept the hearing judge's findings of fact as "correct unless shown to be clearly erroneous." *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011). If no exceptions are filed, we may treat the findings of fact as established for the purpose of determining the appropriate sanction. Md. Rule 16-759 (b)(2)(A). We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1); *Page*, 430 Md. at 626. This is true even if, as in this case, the hearing judge entered a default order against the respondent. *See Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 653 (2003). The ultimate decision as to whether an attorney has engaged in professional misconduct lies with this Court. *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014).

## IV. Discussion

Neither Respondent nor Bar Counsel filed exceptions to the hearing judge's findings of fact. We therefore treat those findings as established. *See* Md. Rule 16-759 (b)(2)(A). Likewise, neither party filed exceptions to the hearing judge's conclusions of law. We have reviewed the record, and we agree with the hearing judge's legal conclusions that

Respondent violated MLRPC 1.4(a); MLRPC 1.15(a) and (d); MLRPC 1.16(d); MLRPC 8.1(b); MLRPC 8.4(c) and (d); and Maryland Rule 16-607.

MLRPC 1.4(a) provides, in pertinent part, that "[a] lawyer shall . . . keep the client reasonably informed about the status of the matter[, and] promptly comply with reasonable requests for information . . . ." A lawyer's "repeated disregard" of his or her obligation to respond to inquiries from clients regarding the status of their cases violates MLRPC 1.4(a). *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 336 (2013); *see also Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 554 (2011) (holding that an attorney violated MLRPC 1.4, in part, by not responding to a client's letters inquiring about the status of his case). Respondent violated MLRPC 1.4(a) by failing to keep Mr. Miller reasonably informed of the status of the trust proceeds owed to him, and by failing to comply with Mr. Miller's reasonable request for information concerning the status of those trust monies.

MLRPC 1.15(a) provides, in pertinent part, that "[a] lawyer shall hold [the] property of clients . . . that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." MLRPC 1.15(a) also provides that client funds should "be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with [those Rules]." Maryland Rule 16-607 in turn provides that "[a]n attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule."

We have held that an attorney's depositing both personal funds and client funds in a trust account to cover personal expenses is a misuse of trust funds, which "clearly violates" MLRPC 1.15(a) and Maryland Rule 16-607. *Attorney Grievance Comm'n v. Kobin*, 432 Md. 565, 582 (2013); *see also Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 638–39 (2007). Respondent violated those rules by transferring a total of $2,450 from his personal account to his IOLTA Account, then, without promptly withdrawing those funds from the IOLTA Account, writing a check from that account in the amount of $1,625, issued to "ACC Telecom."

MLRPC 1.15(d) provides, in pertinent part, that "a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property." *See, e.g.*, *Attorney Grievance Comm'n v. Levin*, 432 Md. 439, 444 (2012) (holding that failure to deliver promptly property belonging to clients and to render promptly an accounting of that property violated MLRPC 1.15(d)). Respondent violated MLRPC 1.15(d) by not delivering promptly to Mr. Miller the balance of the funds to which he was entitled, and by failing upon Mr. Miller's request to render promptly a full accounting of the balance of the settlement proceeds.

MLRPC 1.16(d) provides, in pertinent part, that, "[u]pon termination of representation, a lawyer shall take steps to . . . protect a client's interests, such as giving reasonable notice to the client, . . . surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred." "Where a lawyer abandons a client without notice 'through the failure to take

- 10 -

meaningful steps in pursuit of the client's interest, and fail[s] to return unearned portion of a fee paid by the client,' he or she violates MLRPC 1.16(d)." *Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 255 (2013) (quoting *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 225 (2012)). Respondent violated MLRPC 1.16(d) both by essentially abandoning Mr. Miller without any explanation when Respondent left for Ghana, and by failing to distribute to Mr. Miller the full remaining balance of his settlement proceeds.

MLRPC 8.1(b) provides, in pertinent part, that a lawyer "in connection with a disciplinary matter[] shall not . . . knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." *See also Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 174 (2010). Respondent failed to respond to the Commission's September 19, 2011 letter, receipt of which Respondent acknowledged through his intern, Ms. Nandule-Cook, and thereby violated MLRPC 8.1(b).

MLRPC 8.4 provides, in pertinent part, that "[i]t is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[,]" and "(d) engage in conduct that is prejudicial to the administration of justice[.]" Misappropriation of client funds is "dishonest conduct" that also is "prejudicial to the administration of justice in violation of [MLRPC] 8.4(c) and (d)." *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 132 (2012); *see also Attorney Grievance Comm'n v. Landau*, 437 Md. 641, 652 (2014) (finding that an attorney who neither administered nor accounted for client funds, and instead withdrew them for personal use, violated MLRPC 8.4(c) and (d)).

- 11 -

Respondent failed to return Mr. Miller's funds or provide an accounting that would establish distributions other than the amounts to which Mr. Miller and Ms. Williams testified. Respondent thereby knowingly and willfully misappropriated the balance of Mr. Miller's settlement proceeds, which amounted to $11,517. Respondent's misappropriation of Mr. Miller's funds establishes a violation of MLRPC 8.4(c). That conduct is prejudicial to the administration of justice, in violation of MLRPC 8.4(d).

## V. Sanction

Our only remaining task is to determine the appropriate sanction for Respondent's misconduct. "The severity of the sanction for an attorney's misconduct 'depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors.'" *Landau*, 437 Md. at 651 (quoting *Attorney Grievance Commission v. Ward*, 394 Md. 1, 33 (2006)). "[T]he primary purpose is to protect the public and the public's confidence in the legal profession and not to punish the lawyer." *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 474 (2002). The sanction should also be "aimed at deterring other attorneys from engaging in similar conduct." *Id.* at 474–75.

The core of Respondent's misconduct is the misappropriation of funds entrusted to him. We have explained that,

> [i]t has long been settled that an attorney's misappropriation of funds entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. The default sanction for ethical violations involving intentional misappropriation, or other intentional dishonest conduct, is disbarment.

*Zimmerman*, 428 Md. at 146 (quoting *Attorney Grievance Comm'n v. Stern*, 419 Md. 525, 558 (2011)). Disbarment is justified in cases involving intentional misappropriation of client funds because "[a]ppropriating any part of those funds [for an attorney's] own use and benefit without clear authority to do so cannot be tolerated." *Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345 (1991); *see also Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161 (2005) ("[T]he misappropriation of entrusted funds is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.") (internal quotations omitted).

Respondent was entrusted to hold Mr. Miller's settlement proceeds. Despite repeated attempts from Mr. Miller to retrieve the balance of the funds to which he is entitled, Respondent willfully failed both to administer the remaining settlement proceeds and to render a full accounting. Such misconduct warrants disbarment. *See Landau*, 437 Md. at 652–53 (holding that disbarment was appropriate where the respondent, "entrusted with the collection of thousands of dollars owed to his client, neither administered nor accounted for those funds"); *Attorney Grievance Comm'n v. Mitchell*, 386 Md. 386, 400–01 (2005) (holding that disbarment was merited when an attorney used a client's settlement proceeds for personal expenses, "thereby denying his client that which was justly hers[]").

Because Respondent failed to offer any extenuating circumstances that could somehow have served to mitigate his misconduct, this Court finds that the appropriate sanction for Respondent's misappropriation of his client's funds, coupled with his multiple

other violations, is disbarment.  Accordingly, we entered the September 10, 2014 order disbarring Respondent and awarding costs against him.